S08A0584. WASHINGTON v. McKIBBON HOTEL GROUP, INC.
(664 SE2d 201)

CARLEY, Justice.

At issue in this case is title to an almost triangular, 0.082-acre parcel of real property. Vernita Kearse originally had record title, but the property was sold for nonpayment of taxes. Charles Layton was the purchaser of the property and received a tax deed in 1982, but he then lost the property due to nonpayment of taxes. Johnnie Mae Shedrick purchased the property and received a tax deed in 1984. She also lost the property for nonpayment of taxes, and it was purchased by Appellant Alvin Washington, who received a tax deed to the property in 1990.

Appellee McKibbon Hotel Group, Inc., which owns property contiguous to the parcel of land at issue, purchased Mr. Layton's interest in 2006, and brought an action for quiet title in 2007, claiming title to the property by means of a right of redemption which it acquired through that purchase. Appellant claimed title through his purchase of the property at a tax sale followed by his purported foreclosure of the rights to redeem the property from the sale pursuant to OCGA § 48-4-45 or, alternatively, through the ripening of his tax deed by prescription into fee simple title under OCGA § 48-4-48 (b). In accordance with OCGA § 23-3-63, the case was submitted to a special master, who recommended issuance of a decree which vested fee simple title in Appellee. The trial court approved and adopted the special master's report, and entered a decree vesting title in Appellee. Appellant appeals from that order.

1. The trial court, through its adoption of the special master's report, concluded that Appellant's claim of foreclosure of the rights to redeem failed because "the documentary record is silent as to any actions taken by him in this regard" and, even if that were not so, "he still failed to set out all of the requisite requirements for a barment, such as notice to any occupants of the property and all persons with any interest of record."

"[O]ne seeking to bar redemption under OCGA § 48-4-45 must comply with its notice requirements." *Blizzard v. Moniz*, 271 Ga. 50, 54 (518 SE2d 407) (1999). However, regardless of whether the trial court erred in finding that Appellant failed to comply with those notice requirements, the trial court did correctly conclude that his claim of foreclosure of all rights to redeem must fail "since the documentary record is silent as to any actions taken by him in this regard." We take this statement to refer to the trial court's previous finding that the county real estate records do not contain an entry memorializing the successful completion of the foreclosure of the right of redemption. "Any original notice [of such foreclosure] together with the entries on the notice may be filed and recorded on the deed records in the office of the clerk of the superior court of the county in which the land is located." OCGA § 48-4-46 (d).

Even assuming that Appellant's evidence documenting the steps he took in 1992 to foreclose the rights of redemption reflects compliance with OCGA § 48-4-45 as a matter of law, there nevertheless is not any evidence of record that those steps were successfully completed. Indeed, this litigation would not have taken place had the purported foreclosure of the right of redemption been filed and recorded. Appellee acquired the interest of a tax deed grantee with notice only that Appellant, as a subsequent tax deed grantee, held an inchoate or defeasible title under the laws of this state and that Appellant's title could be perfected upon foreclosure of all senior

rights of redemption. However, Appellee did not have any notice that such foreclosure had been accomplished so that Appellant's interest through his junior tax deed became a perfect fee simple title. See *Bennett v. Southern Pine Co.*, 123 Ga. 618 (51 SE 654) (1905) (a tax deed constitutes record notice only that the grantee has an inchoate title subject to redemption). Compare *Herrington v. LaCount*, 225 Ga. 232, 233-234 (167 SE2d 631) (1969) (where the seven-year period of repose provided under the law in effect from 1949 to 1978 had expired, see *Moultrie v. Wright*, 266 Ga. 30, 31-32 (1) (464 SE2d 194) (1995), the lack of a foreclosure of redemption on record was insufficient to prove that fee simple title had not vested in grantee of tax deed or in his assignees). Thus, with respect to Appellant's interest as a result of his purported foreclosure of the rights to redeem, Appellee stands in the position of a good-faith purchaser for value without notice.

2. Even though Appellant failed to give record notice of the allegedly complete foreclosure of redemption, we still must address whether his 1990 tax deed title ripened by prescription into fee simple title four years after the execution of the tax deed. See OCGA § 48-4-48 (b)-(d).

In order for a tax deed title to ripen by prescription into fee simple title, the plain language of OCGA § 48-4-48 (b) requires adverse possession, as set forth in OCGA § 44-5-161, by the tax deed grantee for a period of four years. *Mark Turner Properties v. Evans*, 274 Ga. 547, 549 (2) (554 SE2d 492) (2001); *Blizzard v. Moniz*, supra. Under OCGA § 44-5-161 (a) (3), it is mandatory that possession, in order to be the foundation of prescriptive title, "be public, continuous, exclusive, uninterrupted, and peaceable . . . ." Furthermore, "the purchaser at a tax sale does not have constructive possession of the premises. [Cit.]" *Mark Turner Properties v. Evans*, supra.

> Actual possession of lands may be evidenced by enclosure, cultivation, or any use and occupation of the lands which is so notorious as to attract the attention of every adverse claimant and so exclusive as to prevent actual occupation by another.

OCGA § 44-5-165. "Where there is no evidence of enclosure or cultivation, notoriety and exclusivity become questions of fact . . . . [Cits.]" *Friendship Baptist Church v. West*, 265 Ga. 745 (462 SE2d 618) (1995).

In the report adopted by the trial court, the special master resolved these questions of fact as follows:

Although [Appellant's] possession factually meets four of the tests for prescription listed [in OCGA § 44-5-161], he failed to establish by a preponderance of the evidence facts which satisfy the third requirement, that his possession was public, continuous, exclusive, uninterrupted and peaceable. His testimony was unpersuasive that he did anything other than pay the taxes on the property and occasionally cut the grass. There is not evidence of any occupancy by himself or anyone else on his behalf, nor that the premises were cultivated, fenced or in any other way utilized so as to provide notice to other persons of his interest in the property. It is apparent that the City performed much of the maintenance on the property as [Appellant] was admittedly unable to do so, including demolition of the structure on the property, which was never occupied. Thus, his claim of prescription under the statute fails.

Although the nature and situation of the property and the uses to which it can be applied are proper considerations, "the fact that the land may be useless for most purposes will not relieve the claimant of the necessity of establishing such possession as will meet the requirements of law and serve to warn the true owner of his adverse claim." 1 *Pindar's Ga. Real Estate Law and Procedure* § 12-28, p. 825 (6th ed. 2004) (citing *McCook v. Crawford*, 114 Ga. 337, 339 (40 SE 225) (1901), which held that use of the land for timber cutting and as range for livestock did not constitute actual possession, that at least a fence could have been erected even if it was expensive and troublesome, and that, if the character of the property makes it truly impossible to be in actual possession thereof, title cannot be acquired by prescription, but only by written evidence of title).

The findings of the trial court in this case show that Appellant "did mow and occasionally clean up the area, but that is not generally sufficient to constitute actual possession, much less to require such conclusion as a matter of law. [Cit.]" *Friendship Baptist Church v. West*, supra at 746. Furthermore, "[p]ayments of taxes 'are insufficient to establish prescriptive title, however long continued, even though accompanied by constant assertions of title.' [Cits.]" *Mark Turner Properties v. Evans*, supra. Accordingly, neither Appellant's payments of taxes nor occasional cleanup and mowing are

as notorious or exclusive as . . . enclosure or cultivation would be. Therefore, the issue of actual possession "becomes a question of fact for the jury. (Cit.)" [Cit.] Where[, as

here,] there is some evidence on either side of this issue, a reviewing court should not disturb the verdict. [Cit.]

*Friendship Baptist Church v. West*, supra. Thus, the trial court did not err when it concluded that Appellant's tax deed did not ripen by prescription into a fee simple title. The opposite conclusion could be reached only by overruling *Friendship Baptist Church* or by wholly disregarding that controlling precedent.

3. The trial court also correctly determined that Appellee holds the senior right to redeem the property and is entitled to do so from Appellant. Because Appellee's calculations of the redemptive price were unrefuted, the trial court ordered Appellant to execute a quitclaim deed to Appellee upon receipt of the tendered money. Indeed, Appellant did not offer any evidence to the contrary at the special master's hearing. Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed. All the Justices concur, except Sears, C. J., who concurs in the judgment only and Benham, J., who dissents.*


BENHAM, Justice, dissenting.

I respectfully disagree with the majority opinion which affirms the trial court's award of fee simple title to McKibbon Hotel Group, the entity which purchased a 22-year-old right of redemption and exercised it against Alvin Washington, the individual who had purchased the property at a tax sale in 1990 and had maintained the .082-acre parcel and paid taxes on it for the ensuing 17 years.[1]

1. Appellant Washington claimed title to the property through

---

[1] At conflict in this case are two public policies applicable in cases involving the sale of real property in a tax sale. On one hand, because of the harsh procedure of collecting taxes through the sale of the property of the delinquent taxpayer, courts liberally construe statutory provisions permitting the taxpayer to redeem the property (see *Wallace v. President Street*, 263 Ga. 239 (1) (430 SE2d 1) (1993)); on the other hand, the courts have recognized the policy of the law to encourage free alienability of real property and certainty of title. See *Moultrie v. Wright*, 266 Ga. 30 (1) (464 SE2d 194) (1995) (applying 1949 law); Hinkel, Pindar's Georgia Real Estate Law and Procedure, § 7-156 (6th ed.). In the case at bar, McKibbon invokes a 22-year-old right of redemption, which furthers the policy of allowing property owners (and their assignees) to redeem the property lost due to non-payment of taxes; however, an unlimited right of redemption of property sold at a tax sale acts as a restraint on the alienability of real property once sold in a tax sale. This Court endorsed the General Assembly's enactment in 1949 of a period of repose with regard to the right of redemption in *Stith v. Morris*, 241 Ga. 247, 250 (244 SE2d 817) (1978), opining that the legislative declaration that title ripened under a tax deed after a stated period of time had lapsed, without reference to adverse possession, "had the effect of making these titles certain and foreclosing inquiry into the legality of tax deeds made in the distant past . . . where the facts and circumstances pertaining to the tax sale would be almost impossible to ascertain." See also *Moultrie v. Wright*, supra, 266 Ga. at 31 (1) ("in the interest of the certainty of title and the free alienability of property, the General Assembly [by enacting the 1949 law] determined that . . . the right to redeem may be foreclosed by the passage of time."). Certainty of title suffered a blow when the General Assembly amended OCGA § 48-4-40 in 1978 to again provide for a period of adverse

his completion of a bar of redemption in 1992 and, alternatively, by his tax deed ripening by prescription into fee simple title pursuant to OCGA § 48-4-48 (b). Citing OCGA § 48-4-46 (d), the majority affirms the trial court's[2] ruling that Washington's claim of barment fails because the county real estate records do not contain an entry memorializing Washington's successful completion of the foreclosure of the right of redemption. OCGA § 48-4-46 (d) does not require that the successful foreclosure of the right of redemption be filed in the real estate records; instead, it provides, using permissive rather than mandatory language, that the **notices** required by OCGA § 48-4-45 and the sheriff's entries on those notices, "may be filed and re-corded. . . ." This statutory provision does not mandate that the completion of the foreclosure process must be documented on the county real estate records. In the absence of a mandatory require-ment that a party seeking to foreclose the right of redemption must obtain written documentation of the completion of that process and file that documentation in the real estate records, the lack of such filed documentation is not fatal to Washington's claim of barment. Rather, the trial court must examine whether Washington completed the barment process, the only requirement of which is giving notice under OCGA § 48-4-45.

2. The trial court did turn its attention to the actions Washing-ton took in his effort to foreclose the right of redemption, and found that Washington had "failed to set out all of the requisite require-ments for a barment, such as notice to any occupants of the property and all persons with any interest of record." The record shows the trial court erred in this determination.

The purchaser of property in a tax sale can foreclose the right to redeem from the sale by serving notice of such foreclosure on the person who lost the property in the tax sale; the occupant, if any, of the property; and all persons having of record in the county in which the land is located any right, title, interest in, or lien upon the property. OCGA § 48-4-45 (a) (1). The purchaser must also publish notice of the foreclosure of the right of redemption in a local paper for four consecutive weeks. OCGA § 48-4-45 (a) (1). A copy of the newspaper notice containing the dates of publication establishes the accomplishment of this requirement. *GE Capital Mtg. Svc. v. Clack*, 271 Ga. 82 (2) (b) (515 SE2d 619) (1999).

---

possession to pass before fee simple title vested in the holder of a tax deed (Ga. L. 1978, p. 309, § 2), and parties are again faced with the possibility of having to establish the validity and legality of a tax sale under OCGA § 48-4-48 many years after the fact.

[2] As noted by the majority, the findings were made by a special master who heard the case pursuant to OCGA § 23-3-63 and were adopted by the trial court.

Washington testified at the hearing before the special master that he began the process to foreclose the right of redemption more than 12 months after the recording of the tax deed he received as a result of his tax-sale purchase. He presented the December 1992 receipt from the county sheriff acknowledging payment for service of notice "for Bar of Redemption on Johnnie Mae Shedrick," the person who lost the property in the tax sale at which Washington purchased the property, and he presented a return of service on Ms. Shedrick showing the sheriff had tacked the bar of redemption process on the door of the premises on the property. See OCGA § 48-4-46 (b) ("Leaving a copy of the notice at the residence of any person required to be served with the notice shall be a sufficient service of the notice."). Washington also presented evidence of the publication in the local paper of properly-timed notices of the foreclosure of the right of redemption (including a copy of the advertisement), addressed to Ms. Shedrick, her heirs, devisees, assigns, and to any and all persons, firms or corporations having a legal interest in the property. See OCGA §§ 48-4-45 (a) (3); 48-4-46 (c).

Contrary to the trial court's finding of fact, the sheriff's return of service in the action entitled "Bar of Redemption" brought by Washington in December 1992 shows the officer tacked the affidavit and summons to the door of Ms. Shedrick's last known address, the dwelling place on the contested property. The trial court also found fault with the failure to provide notice to the occupant of the property. However, OCGA § 48-4-45 requires service on "[t]he occupant, if any," and there was unrefuted testimony that no one occupied the property after appellant purchased it in the 1990 tax sale. The trial court also took exception to Washington's alleged failure to provide notice "to all persons with any interest of record." Washington testified he did not know of any people other than Ms. Shedrick and did not serve them. However, OCGA § 48-4-45 (a) (2) provides that if persons having of record any right, title, or interest in or lien upon the property do not live in the county where the property is located, they are not required to be served with notice, but are entitled only to notice by registered or certified mail, and then only if their address is "reasonably ascertainable." See *H&C Development v. Bershader*, 248 Ga. App. 546 (1) (546 SE2d 907) (2001) (whether an address in tax records was reasonably ascertainable was a jury issue). There was no evidence that this exception to the notice requirement was not pertinent in 1992, when Washington was attempting to foreclose the right of redemption.

3. As noted by the majority, even if the tax-sale purchaser does not give notice of the foreclosure of the right of redemption, the title under a tax deed properly executed in 1990 at a valid and legal sale

ripens by prescription four years from the date of recordation of the tax deed and vests fee simple title in the grantee. OCGA § 48-4-48 (b)-(d). Washington testified he paid taxes on the parcel and maintained the parcel by mowing and raking it three or four times a year. City of Savannah personnel supplemented Washington's periodic maintenance and demolished the dilapidated, unoccupied, one-room structure on the property. Washington presented evidence of the bills submitted to him by the city for its services and it was undisputed he had paid the bills.

The trial court found, and the majority agrees, that appellant did not establish that his possession of the property was public, continuous, exclusive, uninterrupted, and peaceable, noting there was no evidence Washington occupied the property or cultivated, fenced or used the property to provide notice of his interest in the property. I disagree. One claiming prescriptive title is not required to enclose the property claimed in order to sustain the claim. *May v. Sorrell*, 153 Ga. 47 (14) (111 SE 810) (1922); 7 Powell, Law of Real Property, pp. 91-74 — 91-76, § 1013[2][h][ii] (Rev. ed. 1995).

> [T]o constitute an adverse possession, there need not be a fence, building, or other improvement made; and that it suffices, for this purpose, that visible and notorious acts of ownership are exercised over the premises in controversy, for the time limited by the Statute. That much depends upon the nature and situation of the property — the uses to which it can be applied or to which the owner or claimant may choose to apply it.

*Royall v. Lisle*, 15 Ga. 545, 547 (1854). The tax-sale purchaser must present evidence he "engaged in any act evidencing possession or claim of ownership. . . ." *Blizzard v. Moniz*, 271 Ga. 50, 53 (518 SE2d 407) (1999). See also *Mark Turner Properties v. Evans*, 274 Ga. 547 (2) (554 SE2d 492) (2001).

For the possession to be public

> the physical evidences of it must be such as to notify all other claimants that the possessor is not merely trespassing on the land, but that he is intending to appropriate it to use and ownership. . . . [T]he acts of possession must be such as to indicate an intention to appropriate the land to some permanent use.

Powell, Actions for Land, p. 394, § 330 (Rev. ed.). Washington testified he maintained the property by occasionally cutting the grass and paid the city for maintenance services when he was not physi-

cally able to perform them. He also paid for the demolition and removal of the one-room structure on the wedge-shaped piece of property. If maintenance of an improvement on real property is evidence to others of one claimant's appropriation of the land for that claimant's use (see *Seignious v. MARTA*, 252 Ga. 69, 72-73 (311 SE2d 808) (1994)), so too is a claimant's demolition of the single improvement on the property "an act evidencing possession or claim of ownership. . . ." *Mark Turner Properties v. Evans*, supra, 274 Ga. 547 (2). The property at issue, a wedge-shaped piece of urban real estate less than one-tenth of an acre in size, did not have utility service or a habitable dwelling upon it, so the lack of physical occupation is understandable. The small size of the lot and the fact that Washington did not live nearby made cultivation and fencing impractical. In light of "the nature and situation of the property," i.e., its small size, its irregular shape, and Washington's decision to demolish the lone improvement and do nothing with the property other than to maintain it as undeveloped land, Washington's acts of maintaining the property and paying others to do so were "visible and notorious acts of ownership . . . exercised over the premises in controversy" *(Royall v. Lisle,* supra, 15 Ga. at 547), and constituted acts "evidencing possession or ownership." That conduct, when coupled with Washington's payment of taxes on the property,[3] amounts to adverse possession of the property.

"After the time fixed by the statute for redemption has expired, the right to redeem is gone, and there is no power even in a court of equity to authorize a redemption of the property in such cases." *Boroughs v. Lance,* 213 Ga. 143 (1) (97 SE2d 357) (1957) (quoting *Montford v. Allen,* 111 Ga. 18, 24 (36 SE 305) (1900)). Because I believe the trial court erred when it concluded that Washington's claim of barment failed due to a lack of documentation in the real estate records of the successful completion of that process, as well as when it concluded that Washington's tax deed had not ripened by prescription into a fee-simple title over the 17 years since his purchase of the property at a tax sale in 1990, I respectfully dissent.

DECIDED JULY 11, 2008 —
RECONSIDERATION DENIED JULY 25, 2008.

*Christy C. Balbo, Lloyd D. Murray,* for appellant.
*Hunter, Maclean, Exley & Dunn, Robert B. Lovett, Timothy R.*

---

[3] While payment of taxes alone is not sufficient to establish prescriptive title *(Mark Turner Properties v. Evans,* supra, 274 Ga. 547 (2)), it is an act "evidencing possession or claim of ownership." *Blizzard v. Moniz,* supra, 271 Ga. at 53.

*Walmsley, Gannam, Gnann & Steinmetz, J. Hamrick Gnann, Jr.*, for appellee.