**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**May 22, 2020**

# In the Court of Appeals of Georgia

A20A0265. TYNER v. EDGE et al.

BROWN, Judge.

Robert Tyner appeals from the trial court's grant of partial summary judgment in favor of The Edge Company, LLC in his action to quiet title and seek redemption of real property following a tax sale. He asserts that the trial court erred by concluding that the right to redeem the subject property following the tax sale had been properly foreclosed. For the reasons explained below, we disagree and affirm.

"On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation and punctuation omitted.) *Giles v. Swimmer*, 290 Ga. 650, 651-652 (1) (725 SE2d 220) (2012). In

cases submitted to a special master under OCGA § 23-3-63, as in this case, "the trial court must independently evaluate the correctness of the [special master's] report before adopting it as the judgment of the court." *Steinichen v. Stancil*, 281 Ga. 75, 76 (2) (635 SE2d 158) (2006). "[T]he trial court is not obligated to accept a special master's erroneous legal conclusion." *Eardley v. McGreevy*, 279 Ga. 562, 565 (2) (615 SE2d 744) (2005). The evidence presented below consists of Tyner's verified petition, affidavits and accompanying exhibits, and The Edge Family LLC's response to Tyner's Requests for Admissions.[1]

Tyner alleged that he purchased the subject commercial property, located in Gainesville, Georgia, "from Frances Cowart by contract for $40,000[ ], payable in installments of $400[ ] per month, beginning in 1994. [He] made the final payment in 2003. Upon making the final payment, Ms. Cowart was supposed to execute a deed to the [p]roperty in [his] favor." He asserts that Frances Cowart died in October 1995, and that her estate never filed a deed "due to an oversight" even though he purchased

[1] While The Edge Family, LLC's "Answer and Counterclaim" included a verification, it stated that the facts alleged therein "were true and accurate to the best of [the affiant's] knowledge and belief" rather than personal knowledge. As this is an insufficient verification, we can only consider admissions in judicio within the answer and counterclaim. See *Shadder v. Holland*, 350 Ga. App. 191, 192 (828 SE2d 418) (2019).

2

the property and had made all of the required payments. He averred that he "exercised public, continuous, exclusive, uninterrupted, and peaceable possession and occupancy of the [p]roperty from 1994 until 2014." Additionally, he or one of his companies paid the taxes "[f]or the entire period of [his] possession" and he "treated the [p]roperty as [his] own because [he owns] it." Receipts attached to his complaint show that taxes on the subject property in a total amount of $9,848.36 were paid by Tyco Coin Systems Inc., Tyco Coin Systems, Tyco Coin, North Lake Laundry, or Robert Tyner for the years 1995 though 2010, with the exception of the year 2007. Although the receipt states that Frances Cowart paid the taxes that year, Tyner asserts that this is an error and that he was the person who actually had paid them. The fair market value for the subject property listed on the tax receipts ranged from $59,800 to $77,995. No written contract to purchase the property was attached to Tyner's affidavit and he does not specify whether the contract was in writing or oral.

Tyner asserts that he did not pay the property taxes in 2011 "[d]ue to an accounting error." On September 4, 2012, The Edge Family, LLC purchased the subject property at a tax sale for $4,700. In December 2013, a notice of foreclosure of the right to redeem was sent by certified mail to various addresses for "Frances H. Cowart and/or The Estate & Heirs of Frances H. Cowart," as well as "Occupant(s)"

3

of the subject property. The certified letter addressed to "Occupant(s)" was marked "Return to Sender No Such Number Unable to Forward." The notice stated that the right to redeem the delinquent property taxes would expire on February 7, 2014.

After the foreclosure process was completed, presumably some time after February 7, 2014, Ray Edge, a member of The Edge Family, LLC, took possession of the property. He described the condition of the property at that time as follows:

> When I took possession of the property it was in bad shape. Water would flood the building when it would rain, from holes in the roof and through the walls, causing mildew and rot. Someone had placed oil drums against the outside wall of the building and oil and water would run into the building when it would rain. The property had been vandalized, with the wire being stolen out of the walls, and out of the machines in the building. Vandals and thieves had torn loose part of the walls in three different places to gain access to the building and had taken anything of value that was in the building. The building was full of junk, mostly old rusted and mildewed washing machines and other junk. There was no electricity or water to the building. There were trees grown up around the building, including in front making it difficult to access the building.

After taking possession of the property, Edge made calls to determine if anyone wanted the items in the building. When Edge called Tyner in February 2014, Tyner advised Edge that he owned the building and the equipment inside. Edge claimed that

Tyner explained he had purchased the building "with a handshake." The parties disagree about what happened next. Tyner claims that Edge stated he would sell his equipment back to him for one year's rent, an offer that Tyner declined. Edge claims that he gave Tyner two weeks to investigate his ownership of the building and that when Tyner called him back, he admitted that Edge owned it. When Tyner asked to remove what he wanted from the building, Edge told him that he had to remove everything, "not just some." According to Edge, "Tyner then said that he didn't have any place to put it and told me to do what I wanted with the stuff."

In August 2014, Tyner's attorney sent a letter to Edge and The Edge Family, LLC, stating that Tyner held a "beneficial interest" in the property and demanding that a redemption price for the property be provided within ten days. In February 2015, Tyner's attorney sent another letter asserting that Tyner held an interest in the property and asked again that a redemption price for the property be calculated and provided to him. The letter also sought an accounting for the conversion of the contents of the building. After receiving no response to these letters, Tyner filed a petition to quiet title in his favor (Count 1), to redeem the property (Count 2), for damages for conversion of his personal property (Count 3), and for punitive damages

(Count 4). He identified the property as the defendant in rem, as well as Ray Edge and The Edge Family, LLC as defendants (hereinafter "the Edge defendants").

In their answer, the Edge defendants admitted disposing of the personal property, but claimed that it did not belong to Tyner and did not have the $20,000 value asserted in Tyner's complaint. The Edge Family, LLC and Ray Edge asserted a counterclaim to quiet title in the name of The Edge Family, LLC and for attorney fees and costs under OCGA §§ 13-6-11 and 9-15-14.

The trial court subsequently granted the request of both parties for the appointment of a special master. Tyner moved for partial summary judgment in his favor on his right to redeem the property (Count 2), and the Edge defendants moved for summary judgment in their favor on all counts of Tyner's complaint and in favor of The Edge Family, LLC with regard to its counterclaim to quiet title. The special master held a hearing on the summary judgment motions and subsequently issued a ten-page report recommending, in part, that The Edge Family, LLC's request to quiet title in its favor be granted. The trial court adopted the special master's report "in whole," granted summary judgment in favor of The Edge Family, LLC's petition to quiet title in its favor, and denied Tyner's motion for summary judgment on his

6

petition to quiet title[2] and for redemption of the property. It also declared that "Counts 3 and 4 of [Tyner]'s Complaint remain pending."[3]

On appeal, Tyner contends that the trial court erred by granting summary judgment in favor of the Edge defendants because he was "owner and occupant of the Property."[4] In order to address this contention, we must examine the statutes regarding tax sales in Georgia.

OCGA § 48-4-40 provides:

Whenever any real property is sold under or by virtue of an execution issued for the collection of state, county, municipal, or school taxes or for special assessments, the defendant in fi. fa. or any person having any right, title, or interest in or lien upon such property may redeem the property from the sale by the payment of the amount required for redemption, as fixed and provided in Code Section 48-4-42:

---

[2] We note that Tyner did not seek summary judgment on his petition to quiet title in his favor; his motion only sought summary judgment on his right to redeem the property (Count 2).

[3] Although the Edge defendants moved for summary judgment in their favor on these counts, the special master's report states that they only moved for summary judgment "as to Count 1 and 2" of Tyner's complaint.

[4] Tyner does not enumerate as error the trial court's failure to grant summary judgment in his favor, and the Edge defendants have not filed a cross-appeal in connection with the trial court's failure to rule on their pending motion for summary judgment on Count 3 (conversion) and Count 4 (punitive damages) of Tyner's complaint.

7

(1) At any time within 12 months from the date of the sale; and

(2) At any time after the sale until the right to redeem is foreclosed by the giving of the notice provided for in Code Section 48-4-45.

As the Supreme Court of Georgia explained over 20 years ago,

there is no requirement in OCGA § 48-4-40 that a party's valid interest in property must be recorded in the county's deed books before the party is entitled to redeem the property. Lack of such recordation affects only the notification duties imposed on the holder of the tax deed. See OCGA § 48-4-45 (a) (1) (c).

*Freeman v. Eastern Sav. Bank*, 271 Ga. 439, 440 (1) (520 SE2d 902) (1999). With regard to these notification duties, OCGA § 48-4-45 provides:

(a) After 12 months from the date of a tax sale, the purchaser at the sale or his heirs, successors, or assigns may terminate, foreclose, divest, and forever bar the right to redeem the property from the sale by causing a notice or notices of the foreclosure, as provided for in this article:

(1) To be served upon all of the following persons who reside in the county in which the property is located:

(A) The defendant in the execution under or by virtue of which the sale was held;

8

(B) The occupant, if any, of the property; and

(C) All persons having of record in the county in which the land is located any right, title, or interest in, or lien upon the property[.]

. . .

(b) Nothing contained in this Code section shall be construed to require that any notice be sent to or served upon any person whose right, title, interest in, or lien upon the property does not appear of record in the county in which the land is located.

(c) The heirs of any deceased owner of any land entitled to notice pursuant to this Code section shall be served by the sheriff or notified as provided in this article.

Once the notice required by OCGA § 48-4-45

has been given, no action shall be filed, allowed, sanctioned, or maintained for the purpose of setting aside, canceling, or in any way invalidating the tax deed . . . unless and until the plaintiff in the action pays or legally tenders to the grantee in the deed . . . the full amount of the redemption price for the property. . . .

OCGA § 48-4-47 (a). "The redemption price is the amount paid for the property at the tax sale, as reflected in the tax deed, plus certain other taxes, costs, and penalties that

9

increase as time passes. See OCGA § 48-4-42. [Cit.]" *Saffo v. Foxworthy, Inc.*, 286 Ga. 284, 286 (2) (687 SE2d 463) (2009).

Based on the above, we first examine whether Tyner had "*any* right, title, or interest in or lien upon such property," that might allow him to redeem the property generally. (Emphasis supplied.) See OCGA § 48-4-40. As we already have explained, there is no requirement that his interest be recorded in order to seek such redemption generally. Tyner asserts that he purchased the property through an oral contract that he fully performed, that the deed was never provided by the seller or her estate, that contents in the commercial building belonged to him, and that he paid property taxes on the property for over ten years. While it is true that the Statute of Frauds provides that "[a]ny contract for sale of lands, or any interest in, or concerning lands" is not binding unless it is "in writing and signed by the party to be charged therewith," OCGA § 13-5-30 (a) (4), an exception exists "[w]here there has been performance on one side, accepted by the other in accordance with the contract." OCGA § 13-5-31 (2). In this circumstance, "an oral agreement for the sale of land is enforceable." *Edwards v. Sewell*, 289 Ga. App. 128, 130-131 (1) (a) (656 SE2d 246) (2008). It therefore appears that, at a minimum, a genuine issue of material fact exists as to whether Tyner qualifies to seek redemption. Accordingly, we must determine whether

10

the time in which he may do so has been foreclosed. If The Edge Family, LLC provided proper notice pursuant to OCGA § 48-4-45, then the right to redeem is forever barred. OCGA § 48-4-45 (a).

In his appeal, Tyner asserts that he was an "occupant" entitled to personal service of the notice of foreclosure of his right of redemption. In support of this assertion, he cites the requirement in OCGA § 48-4-45 (a) (1) (B) that the notice "be served upon all of the following persons who reside in the county in which the property is located," including "[t]he occupant, if any, of the property." He also points to the requirement that a sheriff personally serve the persons entitled to notice, OCGA § 48-4-46 (b), but acknowledges that sufficient service would also include "[l]eaving a copy of the notice at the residence of any person required to be served with the notice. . . ." OCGA § 48-4-46 (b). In an affidavit, he stated that his personal residence was an address different from the subject property and located within the same county, that he had lived there for 24 years, that he had a listed telephone number, and that he never received any notice, by personal service, mail, or otherwise, of his right to redeem the property.

The Edge defendants do not assert that they provided to Tyner the service outlined by OCGA § 48-4-46 (b). Instead, they assert that OCGA § 48-4-45 (b)

11

clarifies that service upon an occupant is only required if the occupant has an interest that is "of record," as it provides: "Nothing contained in this Code section shall be construed to require that any notice be sent to or served upon any person whose right, title, interest in, or lien upon the property does not appear of record in the county in which the land is located." OCGA § 48-4-45 (b). In *GE Capital Mtg. Services v. Clack*, 271 Ga. 82 (515 SE2d 619) (1999), the Supreme Court of Georgia applied subsection (b) to conclude that the failure to serve a defendant in fi. fa. under OCGA § 48-4-45 (a) (1) (A) did not affect the validity of the foreclosure of the right of redemption because "his interest did not appear of record in [the county in which the land is located] when the foreclosure of the right of redemption was begun." Id. at 85 (2) (a). Based upon the plain language of OCGA § 48-4-45 (b) and the Supreme Court of Georgia's opinion in *Clack*, supra, we conclude that Tyner was not entitled to service under OCGA § 48-4-45 (a) (1) because his interest was not "of record." OCGA § 48-4-45 (b). Accordingly, The Edge Family, LLC properly foreclosed upon the right of redemption. *Clack*, 271 Ga. at 85 (2) (a).

We find no merit in Tyner's argument that his due process rights will be violated if the only notice of the foreclosure of his right of redemption was through

12

the publication required in all cases by OCGA § 48-4-45 (a) (3).[5] "[R]egardless of whether a proceeding is in rem or in personam, due process requires that a chosen method of service be reasonably certain to give actual notice of the pendency of a proceeding to those parties whose liberty or property interests may be adversely affected by the proceeding." *Abba Gana v. Abba Gana*, 251 Ga. 340, 343 (1) (304 SE2d 909) (1983). With regard to tax sales, the Supreme Court of Georgia has held:

> If the name and address of an interested party can be reasonably ascertained, notice of a tax sale by publication does not meet the requirements of due process. *Mennonite Bd. of Missions v. Adams*, 462 U. S. 791 [(]103 SCt 2706, 77 LE2d 180[)] (1983). This Court has explicitly applied that holding to the notice of foreclosure of the right to redeem. *Funderburke v. Kellet*, 257 Ga. 822 (1) [(]364 SE2d 845[)] (1998).

*Hamilton v. Renewed Hope, Inc.*, 277 Ga. 465, 466 (589 SE2d 81) (2003). In *Mennonite*, the Unites States Supreme Court held:

> Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale. When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by

---

[5] This Code section requires publication of the notice of the foreclosure of the right of redemption for four consecutive weeks.

notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone [is insufficient].

(Citation omitted.) 462 U. S. at 798 (II).

While there is no Georgia case addressing whether unrecorded property interests are reasonably ascertainable for purposes of due process,

[c]ases in sister jurisdictions have held that unrecorded interests are not reasonably ascertainable. See *Johnson v. Michigan Dept. of Treasury*, United States Court of Appeals, Docket No. 99-1730, 2000 U.S. App. LEXIS 9660 (6th Cir. May 4, 2000) (no denial of due process where homeowner not notified of tax foreclosure on home because he did not record deed in his name); *Sterling v. Block*, 953 F2d 198, 200 n.2 (5th Cir. 1992) (unrecorded interests not reasonably ascertainable); *Bender v. Rochester*, 765 F2d 7 (2d Cir. 1985) (after balancing burden on city to identify interests with claimant's ability to protect interests, court determined interests of heirs of deceased property owner not reasonably ascertainable where no death certificate or any other notification on land records that owner was deceased); *Sallie v. Tax Sale Investors, Inc.*, 998 FSupp. 612 (D. Md. 1998) (leasehold interest in property not reasonably ascertainable where leasehold interest not recorded on land records).

*Cornelius v. Rosario*, 138 Conn. App. 1, 17-18 (IV) (51 A3d 1144) (2012). In this case, Tyner's interest in the property was not recorded, and we decline to conclude

14

that receipts in the tax assessor's office showing that he previously paid property taxes created a "legally protected property interest" under the due process clause, particularly when these same receipts listed another person as the property owner. This result is consistent with Georgia law establishing that the "[p]ayment of taxes is not . . . evidence of title and ownership." (Citation and punctuation omitted.) *Byrd v. Shelley*, 279 Ga. App. 886, 887 (2) (633 SE2d 56) (2006).

For these reasons, we affirm the trial court's denial of Tyner's motion for summary judgment in his favor on Count 2 (right to redeem the property) of his complaint, as well as its grant of summary judgment in favor of The Edge Family, LLC on Count 1 of its counterclaim seeking to quiet title in its favor. See *Funderburke*, 257 Ga. at 824 (1) ("Once the right to redeem has been foreclosed under [OCGA] § 48-4-45, the right to redeem is gone. . . .") (citations and punctuation omitted). As previously explained, the Edge defendants' motion for summary judgment on Count 3 (conversion) and Count 4 (punitive damages) of Tyner's complaint remains pending below. The Edge defendants' counterclaim for attorney fees (Count 2) also remains pending as no summary judgment motion was filed by either party in connection with that claim.

As Tyner did not move for summary judgment in his favor on Count 1 of his complaint (quiet title), we vacate the portion of the trial court's order denying a nonexistent motion. Finally, we note that the special master recommended that summary judgment be granted in favor of the Edge defendants on Count 1 (quiet title) of Tyner's complaint and that this recommendation was adopted by the trial court "so that the same shall operate in all respects as the Order of this Court."

*Judgment affirmed in part and vacated in part. Dillard, P. J., and Rickman, J., concur.*